UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| ASONIA C. CORNELISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 6:20-CV-207-REW-HAI |
| v. | ) |
| | ) OPINION AND ORDER |
| SPEEDWAY LLC, | ) |
| | ) |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is Defendant Speedway LLC's motion for summary judgment. *See* DE 41 (Motion). For the following reasons, and upon full review, the Court **DENIES** DE 41.

I. **Background**

On January 1, 2020, eighty-one-year-old Plaintiff Asonia C. Cornelison visited the Somerset, Kentucky Speedway to purchase a lottery ticket. *See* DE 34 ¶ 15 (Amended Complaint); DE 41-3 (EMS record showing age). Though Cornelison has an accessible parking permit, she did not see or seek a designated space in Speedway's lot. *See* DE 34 ¶¶ 16, 19. She, as likely had happened in the past, elected to park on the building's west side instead of in a space at the front of the store.[1] *See id.* ¶ 19. That ended up being a fateful choice.

Cornelison took the most direct route into the store. *See* DE 45-2 at 4:24-25, 5:1-2[2] (A. Cornelison Dep. I). This required her to step onto a six-inch rounded curb, walk a few feet, then step down across an angled curb in front of the main door. *See* DE 44 at 3 (Response); Cornelison

---

[1] Though Cornelison believed this to be the only available parking space, there actually were available spaces in the front of the store. *See* DE 41-2 at 11:14-17 (A. Cornelison Dep. II); DE 41-4 (Speedway Surveillance Footage). Cornelison testified that she did not look for parking spaces in the front of the store because there was "a lot of traffic there that day." Cornelison Dep. II at 17:17.
[2] The page numbers refer to page numbers generated by the ECF system.

1

Dep. I at 4:24-25, 5:1-2. Speedway evidently had, at some point, obstructed a different route through a gate or merchandise placement. *See* DE 29-4 at 4 (Mark Derry Rep.). After Cornelison bought her ticket, she emerged to retrace her original path. *See* DE 34 ¶ 24. She tripped and suffered various harms. *See id*; Derry Rep. at 3.

Cornelison sued Speedway in Pulaski Circuit Court, asserting claims of general negligence, negligent management of property, negligence per se, and gross negligence. *See* DE 1-1 (Complaint). Speedway removed the case to this Court on diversity. *See* DE 1 (Notice of Removal). Thereafter, Cornelison filed an amended complaint, reasserting her original claims, minus negligence per se. *See* DE 34.

Now, Speedway moves for summary judgment. *See* DE 41. As grounds, Speedway claims that Cornelison fails to present evidence of a cognizable property danger or that any curb defect caused her harm. *See* DE 41 at 9-16. Cornelison responded in opposition, *see* DE 44, and Speedway replied, *see* DE 45. The matter is ripe for a ruling.

**II.  Standard of Review**

    **a.  Summary Judgment**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh evidence [or] determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Stated differently, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" is "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

### b. Kentucky Premises Liability[3]

The Court will not rehearse the fulsome history of premises liability law in Kentucky. Several courts, this one included, have trod that path. Suffice it to say that Kentucky has eschewed, of late, rigid categorical approaches and favored a jury-centered resolution of non-frivolous premises-liability cases. The Court discussed this evolution in *Frazier v. Total Renal Care, Inc.*, No. 7:17-CV-68-REW-EBA, 2019 WL 3219148 (E.D. Ky. July 17, 2019).

---

[3] This action is in federal court based on diversity of citizenship, 28 U.S.C. § 1332. *See* DE 1. Because Kentucky is the forum state, the Court will apply Kentucky substantive law. *See Erie R.R. v. Tompkins*, 58 S. Ct. 817, 827 (1938); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) ("As we are sitting in diversity, we apply the substantive law of Kentucky, the forum state.").

3

In Kentucky, landowners have "a general duty to maintain the premises in a reasonably safe manner; and the scope of that duty is outlined according to the status of the plaintiff." *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 909 n.28 (Ky. 2013). In this instance, as a customer of Speedway, Cornelison was an invitee.[4] *See* RESTATEMENT (SECOND) OF TORTS § 332(3) (A.L.I. 1965) (stating that when a plaintiff "is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land[,]" he or she is an "invitee"). As an invitee, Speedway owed Cornelison a duty including the obligation "to discover unreasonably dangerous conditions on the land and either eliminate or warn of [those dangers]." *Shelton*, 413 S.W.3d at 909. Summary judgment is improper if Cornelison presents evidence: (1) that she encountered dangerous condition on Speedway's premises; (2) that the encounter was a "substantial factor" in causing the accident and her injuries; and (3) that because of the condition, Speedway's premises "were not in a reasonably safe condition for the use of business invitees." *Phelps v. Bluegrass Hospitality Mgmt., LLC*, 630 S.W.3d 623, 628 (Ky. 2021) (quoting *Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003)).

**III. Analysis**

The Court assesses Speedway's motion for summary judgment. Plaintiff Cornelison fell at the Somerset Speedway, allegedly suffering injuries. *See* DE 34 ¶ 24. Speedway denies that the premises she encountered featured any dangerous condition. *See* DE 41 at 9-12. Further, Speedway denies that any building flaw caused Cornelison's fall. *See id.* at 12-16. The Court sees close but triable issues.

Speedway questioned Cornelison closely in deposition. It tries to pin her with sworn answers to lawyerly posers about what Speedway "did wrong" and whether Cornelison knew there

---

[4] The parties do not dispute that Cornelison was an invitee. *See* DE 41 at 8; 44 at 6.

were curbs on the chosen route. *See* DE 41 at 4-6. The answers have worth in the case but do not decide it, because the record is more, and more nuanced, than just the Plaintiff's cherry-picked lay responses.

Indeed, Cornelison has an ADA and safe-access expert that is critical of the store and its exterior pathways. *See generally* DE 29-4 Mark Derry Rep. That expert, addressing Cornelison's entry route, criticized: (1) the curbing on both ends; (2) the angled "pie shaped" curb just before the store; (3) the lack of accessible-parking signage; (4) the absence of curb painting; (5) the non-perpendicular, in-path curbing; and (6) the absence of mitigating elements like handrails and a ramped gradient. *See id.* at 3-4. Speedway focuses on the fact that Cornelison chose where to park (eschewing, that day, a search for a better spot in front) and that Cornelison knew there were curbs. *See* DE 41 at 4-6. Her knowledge and choices, though relevant to comparative fault, do not preclude a finding of comparative fault against Speedway.

Kentucky law entrusts most of this calculus to juries. A jury typically must assess whether a condition presents unreasonable risk, whether a premises owner has discharged the duty of care, whether even a known risk still presents an unreasonable risk, and how to allocate comparative fault. These topics, in the normal case, are fact-bound and present issues for pre-trial resolution only in rare circumstances. A few exemplars of this posture suffice:

> [T]he Kentucky Supreme Court has repeatedly and explicitly declared that . . . the unreasonableness and foreseeability of the risk of harm is normally a question for the jury to determine in deciding whether the defendant breached its duty of care in all but the rarest of circumstances.

*Dunn v. Wal-Mart Stores E., LP*, 724 F. App'x 369, 374-75 (6th Cir. 2018).

> The question of breach is factual and often inappropriate for summary determination by the Court. *See Patton* [*v. Bickford*, 529 S.W.3d 717,729 (Ky. 2016)] (categorizing breach as a "question[ ] of fact for the jury to decide"); *Grubb* [*v. Smith*, 523 S.W.3d 409, 421 (Ky. 2017)] (majority opinion) (holding that the question of the "unreasonableness of the risk of harm" as to a condition is "almost always ... properly categorized as a factual one").

5

*Frazier*, No. 7:17-cv-68-REW-EBA, 2019 WL 3219148, at *4.

First, Speedway contends that Cornelison has no evidence of a property danger. *See* DE 41 at 9-12. Next, Speedway asserts that Cornelison has no evidence that any curb defect caused her harm. *See id.* at 12-16. The Court has surveyed the full record here, including the site photos, the depositions, and the reports from opinion witnesses for both sides. Evidence exists in the record, sufficient for Cornelison's assertions to be tried, on both topics.

As to property condition, Speedway's employees recognize that patrons regularly park on the west side and walk the curbed entrance. *See* DE 44-4 at 9, 24 (Employee Dep. Excerpts). Indeed, the pathway features merchandise, so Speedway intends its customers to go there. The placement of the merchandise and other physical barriers keep customers from taking the (inferentially) original plotted westerly route parallel to the building—rather, the layout shunts them along the narrower, curbed sidewalk. *See* Mark Derry Rep. 29-4 at 4. Indeed, defense expert Jason M. Bodart identified two "paths of travel available" to Plaintiff on the incident date, one of which is the route she chose. *See* DE 35-1 at 28.

The record fairly supports the conclusions that, at the time, Speedway did not paint the curb and had insufficient signage as to accessible parking. *See, e.g.*, DE 29-4 Mark Derry Rep. at 3; 44-4 at 6, 27. There is evidence that Speedway knew the curb (at least, near the door) should be painted. *See* DE 44-2. The lack of paint signals a known danger not flagged. Though it is true that Cornelison concedes awareness of the curb, this does not cancel the dangerous nature of an obstacle that perhaps should have been highlighted or made more prominent. Further, the lack of parking signage could have discouraged Cornelison from searching for a safer place to embark. Cornelison parked and, despite the hurdles, simply "took the shortest route" relative to her car. Cornelison Dep. I at 11:8; *see also* Cornelison Dep. II at 6:20-22 (describing the parking spot as "convenient to door").

Cornelison may not have described the curbing as unusual, but her expert surely did. *See* DE 29-4 Mark Derry Rep. at 3-4; Cornelison Dep. I at 12:25 ("It looks big there, don't it?"). He had criticisms about the curbing angle, the cross-slope, the lack of paint, the failure to ramp the step, the non-perpendicular presentation, and the lack of a handrail. *See* 29-4 Mark Derry Rep. at 3. He called the angled curb "strange" and "not an industry standard for curbs." *Id*. at 3-4. The non-standard curb "creates a liability to the public" in Derry's view. *Id.* at 3. Further, the obstruction of the "original circulation route" forces customers onto the angled curb (and a walkway a foot narrower). *Id.* The diversion across the pie-shaped curb "created the circumstances" of Plaintiff's fall, in Derry's view. *Id.* at 4. This is a far cry from the absence of defect evidence the Sixth Circuit criticized in *Littleton v. Lowe's Home Ctrs., LLC*, No. 21-5033, 2021 WL 4058004, at *4 (6th Cir. Sept. 7, 2021) ("At any rate, that a stringer struck Littleton is not evidence that the board fell *because the shelf was overloaded.* Lowe's presented testimony that the shelf was not, and could not have been, overloaded because the stringers were housed within the kickplate. Littleton presented nothing to rebut that."); *id.* ("If a plaintiff comes forward with no evidence of an unreasonably dangerous condition[], but only speculation, the case need not reach a jury."). Here, the physical proof and opinion gloss provide evidence of a defect. Perhaps none of these land persuasively with a jury, but each criticism is a record-based reason to view the curbs as presenting a hazard to invitees. Speedway's claim of no defect evidence is simply not accurate, on this record.[5]

While there are Kentucky cases approving steps or curbs as non-dangerous, the nuances in the defect analysis foreclose that result here. For example, in *Spears v. Schneider*, the court

---

[5] In Kentucky, an unreasonably dangerous condition is one that "is recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized." *Shelton*, 413 S.W.3d at 914 (citing DAN B. DOBBS, THE LAW OF TORTS § 227, at 579 (2001)).

concluded that the steps at issue were not unreasonably dangerous because they "were well-maintained, well-lit, and a handrail was available" and the court could not "imagine what more [the defendant] could have done to eliminate the hazard." *Spears v. Schneider*, No. 2012-CA-000065-MR, 2015 WL 2153310, at *3 (Ky. Ct. App. May 8, 2015). Here, in light of the expert proof and physical circumstances, this Court cannot adjudge that, as in *Spears*, Speedway took all reasonable precautions. Accordingly, a jury must assess. Moreover, in *Preston v. Pleasureville Chevron, LLC*, the court blended curb obviousness and the plaintiff's failure to use due care in denying any landowner duty. *See Preston v. Pleasureville Chevron, LLC*, No. 2007-CA-000721-MR, 2008 WL 746683, at *3 (Ky. Ct. App. Mar. 21, 2008). Here, though evidence suggests that Cornelison may be at some fault for the accident, evidence also supports fault on Speedway's behalf. The curb here, with its "strange" angulation and non-standard presentation, is not the "simple" curb referenced in some cases.[6] The Court has doubt about *Preston*'s vitality given its place relative to the chronology of Kentucky premises law.[7]

As to causal proof, the Court agrees that the case is close. There is no video or witness other than Cornelison. She is unable to say exactly how the fall happened. She does, though, testify that she "tripped" and that she fell directly around the curb. *See* Cornelison Dep. II at 6:7-8 (agreeing she was "going up the curb"); Cornelison Dep. I at 12:6-14 ("I ended up right here . . . . I was close to this, close to the curb, because the manager come out and he sit on the curb there right beside me."). Further, she denies falling before the curb. *See* Cornelison Dep. I at 11:20-

---

[6] "The *Shelton* Court then provided clear examples of situations that normally do not create unreasonable risks: 'a small pothole in the parking lot of a shopping mall.' 'steep stairs leading to a place of business,' or 'a simple curb.' . . . . To be sure, even where step-ups or step-downs cause a fall, Kentucky courts have consistently declined to find the existence of a non-level surface as evidence of negligence in the absence of some other exacerbating factor, such as dim or dark conditions, defects in the structure or some attempt to cover or conceal the change in elevation." *Gollihue v. Lowe's Home Ctrs., LLC*, No. 17-CV-19-HRW, 2017 WL 4979854, at *3 (E.D. Ky. Sept. 26, 2017).

[7] *Spears* itself reiterated: "This typically means a jury should decide the question." *Spears*, No. 2012-CA-000065-MR, 2015 WL 2153310, at *3.

8

21. She attributes the trip to her right foot. *See id.* at 12:6-8 The curb, outside the door, was the only impediment on the path she followed. Interestingly, Speedway's expert described the event as follows: "As she was exiting, she fell on the curb that was on the west side of the entrance[.]" DE 35-1 at 18.

Could a rational jury find that an eight-one-year-old woman, walking across a six-inch pie-shaped curb, who tripped and fell, actually tripped and fell *because of* that curb? The answer is yes, in the Court's view. The cause element requires "some tangible evidence from which it may be fairly said what brought about the accident." *Phelps*, 630 S.W.3d at 628 (quotation omitted). Here, the tangible proof, site evidence, experts, and Plaintiff's recollection coalesce to fairly indicate that the encounter with the curb induced the fall.[8]

As Judge Siler has concisely observed: "A man trips. Who is to blame? In Kentucky, that decision is left in the hands of a jury." *Cundiff v. Worldwide Battery Co., LLC*, 835 F. App'x 117, 118 (6th Cir. Feb. 1, 2021); *id.* at 119 (noting that "even obvious conditions can be unreasonable"). Such is the case here.

IV. **Conclusion**

Given the state of the record, Kentucky's plain preference for jury assessment of premises hazards and comparative blame, and the analysis required, the Court **DENIES** Speedway's motion, DE 41. The parties shall file a joint report by **February 15, 2023**, indicating length of trial, trial readiness, and availability during the summer of 2023.

This the 1st day of February, 2023.



Signed By:
*Robert E. Wier*
United States District Judge

---

[8] The Court assessed *Festervan v. Kroger Co.*, No. 2020-CA-0822-MR, 2021 WL 647122 (Ky. Ct. App. Feb. 19, 2021) and *Klinglesmith v. Pottinger*, 445 S.W.3d 565 (Ky. Ct. App. 2014). Here, the Court finds the proof adequate and non-speculative in terms of creating a jury question on the catalyst for Cornelison's fall.